(No. 54415.—▮▮▮▮▮▮▮▮)

THRALL CAR MANUFACTURING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Helen Jakubielski, Appellee).

*Opinion filed September 30, 1981.*

Julie O'Connor and Robert E. Maciorowski, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

James T. Duda and Walter D. Cummings, Ltd., of Homewood, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Pursuant to the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*), Helen Jakubielski (claimant) filed an application for adjustment of claim for an alleged work-related injury suffered during her employment by Thrall Car Manufacturing Company (respondent). An arbitrator found the injury resulted from an accident arising out of and in the course of her employment and awarded compensation for a permanent and complete loss of 10% of the vision of her right eye. The Industrial Commission reversed, and the circuit court of Cook County set aside the decision of the Commission, reinstating the award of the arbitrator. We reverse the circuit court and reinstate the Commission's decision.

The 58-year-old claimant, who had since the age of six or eight worn glasses to correct nearsightedness, testified that she had been employed by respondent as an industrial nurse for 13 years. She stated that on the morning of March 21, 1977, "I was attending to an employee, and something entered my right eye." She experienced "much tearing and

dizziness," and shortly thereafter reported to her supervisor, was relieved of her duties, and went to see Dr. Robert J. Heidenry at the Suburban Medical Center, a clinic to which respondent's employees requiring medical attention were sent. The doctor, she stated, treated her "for a corneal erosion which was due to a foreign body penetration." He prescribed a medication, Neosporin, and she returned to work that same morning, but subsequently saw Dr. Heidenry "about 20 times." She continued to work, until May 9 when she was discharged for reasons which the record does not disclose, but which her counsel indicated were not related to the March 21 incident. However, a suit, apparently alleging a wrongful discharge, was filed by claimant against respondent and was pending at the time her compensation claim was heard.

Claimant also testified that she had been unable to work in August, September and October 1977, because a corneal ulcer had developed. A written statement by Dr. Heidenry, however, indicates she "was unable to work from August 4 until August 20 due to a corneal erosion of the right eye." Claimant testified she secured full-time employment in December 1977 as an industrial nurse, at which she was still working. She also stated she had no problem reading except for the tearing when her eye would get dry, and that she used medication up to eight times a day plus a lubricant at night; that she has a "constant irritation" which feels like a foreign body in her eye; that she was no longer under a doctor's care, and that her condition was chronic.

While claimant stated, "I had no problems with my right eye" prior to the March 21 incident and that immediately preceding March 21, 1977, it was "perfect," there was evidence to the contrary. A typed report by Dr. Heidenry to claimant's counsel states:

> "Helen Jakubielski was examined by Dr. C. K. Fischer in this office on January 17, 1976. The diagnosis was corneal abrasion right eye. The history in-

cluded a foreign body in the right eye one day previously.

Ms. Jakubielski was next seen in our office on March 21, 1977, because of a foreign body sensation in the right eye. A keratitis was diagnosed bilaterally. On August 4, 1977, a diagnosis of corneal erosion or ulcer of the right eye was diagnosed and was treated with medication and also follow up over many days. Despite considerable improvement Ms. Jakubielski complained of continued tearing and light sensitivity of the right eye. A consultation was arranged with Dr. Michael Davis on September 9, 1977. He recommended continued use of lubricating medication. Another consultation was arranged at Billings Hospital on October 19, 1977.

I last saw Ms. Jakubielski on September 16, 1977. Her vision corrected to 20/25 right eye; 20/20 left eye. She had a corneal opacity in the right eye with symptoms of tearing and photophobia. No other significant pathology was noted at that time. I am currently awaiting the report from Billings Hospital regarding their treatment or recommendations.

The term "keratitis" is not defined in the record. However, Webster's New Third International Dictionary 1237 (1971) defines it as an "inflammation of the cornea of the eye * * *" as does Blakiston's *Gould Medical Dictionary* 722 (4th Ed. 1979). An undated handwritten note bearing the name "K Fischer" appears in Dr. Heidenry's office records. It states "foreign body left eye corneal abrasion. 1/17-[here appear abbreviations which could be interpreted as indicating removal of the foreign body]." A typewritten health insurance claim form bearing an illegible signature and apparently referring to the January 1976 incident names the doctor as Charles Fischer and lists the diagnosis as "Foreign body, left eye. Corneal abrasion." When asked on cross-examination whether the insurance form indicated claimant "received some treatment for right eye irritation on January 16, 1976," claimant apparently agreed and stated, "I paid

this. I went to Dr. Fischer on my own." She stated she did not remember what brought about that condition. There is no reference in the record or briefs to the discrepancy between the *right* eye referred to in Dr. Heidenry's report of the January 1976 incident and the reference in the insurance form report and the handwritten note to the *left* eye. In fact, claimant's brief states, "The records of Dr. John Brotman reveal that the employee was treated for a foreign body in the right eye on January 16, 1976." Since claimant, when asked about the January 1976 treatment of her *right* eye, responded that she had voluntarily seen Dr. Fischer about it, and since no issue is made of respondent's repeated references to the January 1976 treatment of the *right* eye, we assume Dr. Heidenry's report to be the correct one. In any event, the Commission apparently reached the same conclusion, a result clearly not contrary to the manifest weight of the evidence.

Other medical exhibits include three largely handwritten pages apparently representing notes by Dr. J. Brotman of his examination of claimant. Except for some dates commencing in 1974, these records are in part undecipherable, although commencing with January 16, 1976, they appear to make repeated reference to corneal erosion in the right eye, including one such reference on January 31, 1977. Additionally claimant testified that she saw Dr. Raymond Hechter and Dr. Page, the latter at the request of respondent's counsel. A written report by Dr. Hechter to claimant's counsel appears in the record. It relates the results of a May 11, 1978, examination, that claimant stated a foreign body entered her right eye on March 21, 1977, at work, and that she had been treated by Dr. Heidenry for a corneal erosion or ulcer. The report relates that claimant had also been seen by Dr. Michael Davis in September 1977, and that he agreed with Dr. Heidenry's diagnosis and treatment. Dr. Hechter's report concluded:

"Miss Jakubielski gives a definate [*sic*] history of

"recurrent corneal erosion of the right eye. The physical examination of the cornea in the right eye appears to support this diagnosis. This is a condition which usually comes after a foreign body enters the cornea and the area involved does not seem to heal properly, that is, there can be a slough of the tissue in the area of the wound subsequent to a period of time where one would assume there was complete healing. The situation may be chronic and/or may heal itself spontaneously at any time. The present regimen of Lacrilube ointment may be all that she requires. If the foreign body sensation does not relieve itself in the next few weeks I would strongly recommend a therapeutic bandage, soft contact lens. If the situation becomes even worse, she may have to have a tarsorraphy, that is, sewing margins of right lids together for a period of time to allow the epithelial area to heal, not be irritated by normal every day blinking reflexes."

Claimant was the only witness to testify, and there are in the record no reports from Drs. Page or Davis or from Billings Hospital. Claimant stated, however, that Dr. Page, whom she saw in March 1978, had "found a permanent corneal opacity due to a corneal ulcer that I sustained from the foreign body, and he told me to continue with my lacrilube for comfort and relief and in due time it may necessitate surgery."

Respondent's defense to the compensation claim is, in substance, that no foreign body penetrated claimant's eye on March 21, 1977, but that the problem with her eye resulted from the January 1976 incident.

The Industrial Commission apparently rejected claimant's testimony as to the March 1977 incident insofar as it related to material entering her eye at that time. Since no other evidence supported claimant's conclusion, and the medical evidence strongly suggests otherwise, the action of the Industrial Commission in denying an award was not contrary to the manifest weight of the evidence (*O'Dette v.*

*Industrial Com.* (1980), 79 Ill. 2d 249; *Gladstone v. Industrial Com.* (1980), 79 Ill. 2d 236), and the circuit court erred in reversing it.

The judgment of the circuit court of Cook County is accordingly reversed.

*Judgment reversed.*